

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Mr. Sheppard:

Opinion No. O-2612
Re: Authority of the Comptroller
of Public Accounts to approve
the issuance of warrant in
payment of purchase by the
State Board of Vocational Edu-
cation chargeable to the Fed-
eral Rehabilitation Fund in
the absence of approval of such
purchase by the Board of Control.

Your request for a legal opinion is as follows:

"I am attaching hereto claim of C. H.
Stoelting Company for goods sold to the State
Board of Vocational Education drawn against
the Federal Rehabilitation Fund appropriated
for the use of the State Board of Vocational
Education and request that you advise this de-
partment whether or not this claim requires
the approval of the State Board of Control b e-
fore the Comptroller is authorized to issue
warrant in payment for same.

"In connection with this request I am
attaching two Attorneys General Opinions,
written by a former administration, and a copy
of 'Instructions to State Unemployment Compen-
sation Agencies Relative to Fiscal Affairs in
Connection With Grants Made for Expenses of
such Agencies Pursuant to Title III of the
Social Security Act.'"

Article 634 of the Revised Civil Statutes provides:

"The Board of Control shall purchase all
the supplies used by each Department of the
State Government, including the State Prison

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Geo. H. Sheppard, page 2.

> System, and e ach eleemosynary institution,
> Normal school, Agricultural and Mechanical
> College, University of Texas, and each and
> all other State schools or Departments of
> the State Government heretofore or hereafter
> created. Such supplies to include furniture
> and fixtures, technical instruments and books,
> and all other things required by the differ-
> ent departments or institutions, except strict-
> ly perishable goods."

We have several times held that this statute
evidenced a State policy that supplies, equipment and like
things required by the different departments or institu-
tions of the State should be purchased upon contract made
by the Board of Control. Copies of these opinions have in
most instances been given to you, and, of course, are in
your files.

There is no occasion for departure from this es-
tablished rule in the absence of some statutory authority,
either expressly given, or by necessary implication.

The Legislature by Acts of the 43d Legislature
(1933) 1st. C. S. p. 274, ch. 99, § 1, has provided:

> "The Legislature of Texas does hereby
> accept the provisions and benefits of an Act
> of Congress passed June 2, 1920, amended June
> 5, 1924, entitled: 'An Act to provide for the
> promotion of Vocational Rehabilitation of per-
> sons disabled in industry or otherwise, and
> their return to civil employment.'

> "2. The Treasurer of Texas be, and he is
> hereby authorized and empowered to receive the
> funds appropriated under said Act of Congress,
> and is authorized to make disbursements there-
> from upon the order of the State Board of Vo-
> cational Education. The State Board of Voca-
> tional Education is empowered and instructed
> to co-operate with the terms and conditions
> expressed in the Act of Congress aforesaid.

"Sec. 2-a. The Vocational Rehabilitation Division, through the Supervisor of Rehabilitation, is authorized to receive gifts and donations for rehabilitation work, said gifts and donations to be deposited by the Supervisor of Rehabilitation in the State Treasury, subject to the matching of same with Federal Funds up to such amount as the Federal Government may allocate per biennium to the State for said work, and which has not already been met with state appropriations for said biennium."

This Act, in our opinion, does not repeal the prior Act (Article 634) above quoted. There has been no express repeal, and repeals by implication are not favored and will not be permitted except where the two Acts speak with respect to the same subject matter, and are so inconsistent as that both may not stand as the law upon the subject at the same time.

The language of Article 2675-1, § 2 most nearly in conflict with Article 634 is, "the Treasurer of Texas * * * is authorized to make disbursements therefrom (funds appropriated under the Act of Congress) upon the order of the State Board for Vocational Education." There is no real conflict, it is only apparent.

Article 634 does not undertake to clothe the Board of Control with final discretion in the matter of need of our institutions and departments for supplies or equipment, it merely requires when that need is shown to the Board of Control by proper request for requisition, the contract for the purchase of such supplies or equipment is to be made by the Board of Control rather than by the department or institution making the requisition. This is especially true in those cases where, as here, the final discretion as to need is in the department or institution making the requisition.

Both Articles of the statute can stand, and should stand, and be given full force and effect. By doing so, the State's policy to require all departmental and

Hon. Geo. H. Sheppard, page 4.

institutional supplies and equipment to be purchased
through the Board of Control as a contract agency is
respected, without lessening the power of the State
Board for Vocational Education, as provided in Article
2675-1, § 2. The central purchasing agency is an eco-
nomical policy only.

Neither does the holding above indicated im-
pair or in anywise disrupt the harmonious cooperation
between the Office of Education of the United States and
the State of Texas through its State Board of Vocational
Education. A careful reading of Vocational Division
Bulletin No. 113, revised 1938, issued by the United States
Department of Interior, confirms the correctness of our con-
clusion as the question of cooperation between the author-
ized agencies is concerned.

That wholesome cooperation contemplated and
demanded by the Office of Education, and expressly granted
and reciprocated by the Legislature of Texas, pertains to
the larger and humane work of distributing funds appro-
priated by the United States for vocational rehabilitation.

We will next consider whether or not the Board
of Control whose duty it is as we have seen to make pur-
chases for the various state institutions and departments,
may by approval of the claims of persons who have made sale
of supplies or equipment directly to an institution or de-
partment without the purchase having been made by the Board
of Control, so that such claims may be passed by the Comp-
troller for warrant in any event, and if so in what cases
or under what circumstances such belated approval by the
Board of Control will authorize the payment of such a claim.

Article 634a of the Revised Civil Statutes is as
follows:

"Sec. 1. The Board of Control shall in all
public contracts to be let or awarded by it in-
vite bids and furnish proposals to those desir-
ous of bidding on such forms as it may deem
proper. Said Board may place any person, firm
or corporation so desiring on a State mailing

Hon. Geo. H. Sheppard, page 5.

list which said list shall entitle said holder
to a copy of the proposal on any contract that
is to be let. To be entitled to receive such
State mailing list, said holder shall first
pay in advance an annual service charge to be
determined by the Board of Control, which same
shall not be less than Five ($5.00) Dollars
nor more than Seven Dollars and Fifty ($7.50)
Cents.

"Sec. 2. Where any bidder or prospective
bidder, other than those appearing on said
State mailing list, desires to bid on any con-
tract to be let by said Board, he shall pay
such amount for the proposal or proposals fur-
nished to him, as said Board may determine is
just and necessary; provided, however, in the
event said Board finds that a service charge
may work a hardship on some particular bidder
or class of bidders, it may forego such charge
and shall be authorized to furnish such pro-
posals.

"Sec. 3. All amounts collected from the
annual service charge of those on the State
mailing list or from proposals furnished shall
be deposited in the State Treasury in the name
of the 'State Board of Control Special Service
Account,' and enough of said funds so collected
shall be used by said Board and paid out as other
funds are to defray all necessary expenses and
charges in connection with the making and fur-
nishing of said proposals."

Article 631 of the statutes provides for the ap-
pointment of a chief of the division of purchasing, and
subsequent articles further regulate the manner of making
purchases by the Board.

These various statutes make it clear that the
method of purchasing supplies and equipment prescribed by
the statutes is mandatory with the exceptions contained in
Articles 634, 660 and perhaps other pertinent statutes.
In other words, the Board of Control itself has no author-
ity to make purchases except in the manner prescribed by

Hon. Geo. H. Sheppard, page 6.

these statutes.

In Sluder vs. City of San Antonio, 2 S. W. (2) 841, the Supreme Court held through an opinion written by the Commission that a city having entered into a contract in a manner not authorized by law which contract was therefore void should be held liable upon a quantum meruit where it received the benefit of the contract, the contract being one which the city had general power to make if it had pursued the required formalities. It was pointed out this was not making valid the original void contract, but the liability was predicated upon the legal conception of an implied agreement to pay for the value of the performance by the other party which had been accepted by the city.

It is elementary law that where one without authority so to do executes an instrument in the name of another that other may by adoption or ratification make the contract his own, and will of course be bound by its terms. A void contract, however, may not be galvanized into life by ratification, approval or adoption whatsoever. There is no question of ratification involved in the present situation since the contract was not the purported contract of the Board of Control but was one executed by the State Board of Vocational Education through its director. Such contract is invalid and void in that the State Board of Vocational Education had no power to make such a contract. It could not, therefore, have validity imparted to it by any act of the Board of Control whatsoever.

In such a case the Board of Control by approving the purchase and sale claim thus unlawfully attempted makes the transaction its own purchase within the meaning of Article 634 of the Statutes where the transaction was one the Board itself could have made in the manner attempted by the institution. The effect of such approval of the claim would be to make the purchase that of the Board of Control in substantial compliance with the requirement of Article 634 of our statutes. The validity of such claim would be predicated upon the act of the Board in making the purchase its own, and not upon any imparted validity to the original void undertaking of the institution.

From what we have said it would follow that the Board of Control would have no authority to approve a claim

for a purchase not made in accordance with the mandatory provisions of the statute. Specifically, the Board of Control would have no authority to approve such a claim where the purchase was one required by the statutes to be upon competitive bids. It could only be effective in those cases where the purchase was one which the Board of Control itself could have made in the manner attempted by the institution.

In this connection we are of the opinion that if these items of equipment or supplies were of such nature as that competitive bids would be impossible the law would have no application to such a case. It does not require an impossible thing.

If the items of purchase in the present case were such as that the purchase should have been made upon competitive bids, then the Board of Control would have no authority to approve the audit for payment. If, on the other hand, the items were of such nature as that the Board could have purchased them without competitive bids, then the Board in its discretion would have the authority to approve the claim the effect of which approval would in our opinion be a substantial compliance with the statutes of purchase and would entitle the claim to be passed for a warrant of payment.

We have not considered, and express no opinion as to a case where the supplies involved have been consumed at the time the Board is called upon for an approval of the claim. Such a case is not before us.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED AUG 27, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

By

Ocie Speer
Assistant

TS:MR

